**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-21-0000578**
**21-FEB-2025**
**07:56 AM**
**Dkt. 90 SO**

CAAP-21-0000578


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


DEAN K. FUKUCHI, Appellant-Appellant, v.
COUNTY OF HAWAIʻI, DEPARTMENT OF FINANCE,
MOTOR VEHICLE REGISTRATION, Appellee-Appellee


APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
NORTH AND SOUTH HILO DIVISION
(CIVIL NO. 3RC191000596)


SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Wadsworth and McCullen, JJ.)

Self-represented Appellant-Appellant Dean Fukuchi

(**Fukuchi**) appeals from the October 1, 2021 Court's Decision and

Order Denying Appeal Finance Director's Decision and Police

Unsafe Condition Filed June 10, 2019 (**Order Denying Appeal**)

entered by the North & South Hilo Division of the District Court

of the Third Circuit (**District Court**).[1]

Fukuchi raises seven points of error on this appeal,

contending that: (1) the District Court erred in denying

Fukuchi's appeal and concluding that the May 30, 2019 letter

determination and notice (**County's Determination and Notice**)

issued on behalf of the Director of the Department of Finance

(**Director**), Vehicle Registration & Licensing Division, of the

---

[1] The Honorable M. Kanani Laubach presided.

Appellee-Appellee County of Hawaiʻi (**County**), was in compliance with applicable law; (2) the District Court erred in determining that once the County received the April 25, 2019 Total Loss Affidavit from Insurance Auto Auctions, Inc. (**IAA**) by Cassara Nuufolau as Agent for Insurance Company (**Total Loss Affidavit**), Hawaii Revised Statutes (**HRS**) 286-48 (2020) applies, and the County was correct in sending the County's Determination and Notice; (3) the District Court erred in finding and concluding that Fukuchi's real dispute is with the insurance company, not the County; (4) the County's decision to revoke Fukuchi's certificates of title (**Title**) and vehicle registration (**Registration**) pursuant to HRS § 286-22(c) (2020), was not authorized by that statute and should have been withdrawn and rescinded; (5) the County erred in determining that as a result of the damage to Fukuchi's vehicle, it became subject to HRS § 286-48; (6) the County erred in claiming that an insurance company properly notified it of the total loss of Fukuchi's vehicle; and (7) the County erred in accepting IAA's determination that Fukuchi's vehicle was a total loss pursuant to HRS § 286-2 (2007).

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we resolve Fukuchi's points of error as follows:

We begin with <u>Fukuchi's challenges to the County's actions</u>:

(1) Fukuchi argues that the County erred in the County's Determination and Notice when it stated that his

2

vehicle's Title and Registration were revoked pursuant to HRS § 286-22(c), because only a police officer may determine that a vehicle is unsafe pursuant to that statute. HRS § 286-22 provides:

> **§ 286-22 Inspection by officers of the police department.** (a) The chief of police or any police officer of any county may, at any time when the chief of police or police officer has reasonable cause to believe that a vehicle or moped is unsafe or not equipped as required by law, require the owner or driver of the vehicle or moped to submit the vehicle or moped to an inspection or make the necessary corrections or repairs.
>
> (b) If the vehicle or moped is found to be in an unsafe condition or if any required part or equipment is not present or if any required part or equipment is present but not in proper repair, the officer shall issue a citation to the owner or driver stating the reasons that the vehicle or moped is deemed unsafe or is not equipped as required and shall require that a new certificate of inspection as provided in section 286-26 be obtained within five days or that the defect be cured.
>
> **(c) If upon inspection, the chief of police or any police officer determines that any vehicle or moped is in such unsafe condition as to constitute a menace to the public or is not equipped as required and cannot reasonably be restored to a safe condition as required in this part, the chief of police or police officer shall remove the sticker which signifies the certificate of inspection and inform the director of finance who shall immediately suspend the registration of the vehicle or moped and give notice of the suspension to its owner. Whenever the director of finance has suspended the registration of any vehicle or moped under this part, the owner of the vehicle or moped shall immediately surrender and forward to the director of finance the certificate of registration and the license plates last issued upon registration of the vehicle for the current year.**
>
> (d) Any person aggrieved by this section shall have the right to a hearing before a district judge of the circuit in which the person is cited within five days. The judge shall determine whether the chief of police or any police officer reasonably performed the chief of police's or police officer's duties hereunder and shall make any appropriate order.

(Emphasis added).

The County's Determination and Notice states in reference to Fukuchi's vehicle, as identified by its License and Vehicle Identification numbers:

> An insurance company has notified the Vehicle Registration & Licensing Division that you are retaining your vehicle which they have declared a total loss pursuant to Section 286-2, [HRS]. Since the insurance company has

3

stated that your vehicle has sustained material damage to its frame, unitized structure or suspension system, your vehicle's certificates of title and registration are revoked pursuant to Section 286-22(c), HRS. You are required to immediately surrender the vehicle's **certificate of title, certificate of registration and license plates** to this Division.

As a result of the damages to your vehicle, it is now subject to Section 286-48, HRS, and you will be issued new certificates of title and registration upon the surrender of the aforementioned items. In order to restore your vehicle for operation on public roads, you will be required to submit a new safety inspection, a **notarized certificate of inspection**, and your newly issued certificate of registration. The **notarized certificate of inspection** is a signed statement by the State of Hawaii licensed **bonded registered or certified SALVAGE motor vehicle repair dealer** attesting that the vehicle was rebuilt/restored by the same licensed salvage rebuilder as the one certifying that the vehicle was rebuilt in accordance with recognized vehicle manufacturer's established repair procedures or specifications and allowable tolerances for the particular model and year. You may obtain information concerning bonded registered or certified SALVAGE motion vehicle repair dealers from the State Motor Vehicle Repair Dealers Board in Honolulu at 1-808-586-2698.

**Bonded registered or certified salvage motor vehicle repair dealers in the County of Hawaii will not issue a notarized Certificate of Inspection unless the work is performed by them. We will not register a salvaged car without this certification.**

Any questions relating to the declaration of the vehicle being a total loss and the extent of damage to your vehicle should be discussed with the insurance company who settled your claim. If you have sold the subject vehicle, please forward a copy of this letter to the buyer so they are advised of the above requirements.

Fukuchi's argument has merit.[2] HRS § 286-22(a) permits inspection by a county police officer. If upon inspection the police officer makes an "unsafe condition" determination as described in HRS § 286-22(c), then the police officer shall remove the vehicle's safety inspection sticker and notify the Director of Finance. *Then*, pursuant to HRS § 286-22(c), the Director of Finance shall immediately suspend the *registration* of the vehicle and give notice of the suspension to the vehicle

---

[2] The County later conceded that its citation to HRS § 286-22(c) was in error and it would not be proceeding on the charging section of the statute, which the County acknowledged could only be enforced by a police officer. The County did not, however, withdraw the County's Determination and Notice purporting to revoke the vehicle's Title and Registration.

owner, triggering a requirement that the owner immediately surrender and forward the registration and license plates to the Director of Finance.

Contrary to the first paragraph of the County's Determination and Notice, HRS § 286-22(c) does not provide for the revocation of a vehicle's Title. Nor does HRS § 286-22(c) provide for the Director's suspension, revocation, and/or demand for surrender of a vehicle's Title, Registration, and license plates based on an insurance company's declaration and notice to the County that a vehicle is a total loss pursuant to HRS § 286-2.[3]

(2) Fukuchi argues that the County erred in deciding that, as a result of the damages to Fukuchi's vehicle, the vehicle was subject to HRS § 286-48. Fukuchi submits that pursuant to HRS § 286-48(a) & (b), an application for a salvage certificate must be submitted by an insurance company or its authorized agent, which was not what happened in this case. HRS § 286-48 includes a number of requirements and procedures applicable to salvaged vehicles and states as follows:

> **§ 286-48 Certificates of ownership of salvaged motor vehicles.** (a) Whenever a motor vehicle subject to registration under this part is sold as salvage or conveyed to an insurance company, in the ordinary course of business or as the result of a total loss insurance settlement where the insurance company receives the certificates of registration and ownership, the purchaser or, if an insurance company its authorized agent, shall within ten

---

[3] This appears to be a reference to the definition of "Rebuilt vehicle" in HRS § 286-2, which states as follows:

> "Rebuilt vehicle" means any vehicle which has been declared a total loss by an insurer and has been rebuilt or repaired to operate on public highways. For the purpose of this definition, a vehicle is a total loss only if there is material damage to the vehicle's frame, unitized structure, or suspension system, and the projected cost of repairing the damage exceeds the market value of the vehicle at the time of the incident causing it to be declared a total loss.

5

days from the purchase, or the settlement of the insurance loss, forward the motor vehicle's endorsed certificate of ownership or other evidence of title, certificate of registration, license plates, and an application for a salvage certificate as provided for in section 286-44.5, to the director of finance.  If the certificate of registration or one or both license plates are lost, an affidavit, duly notarized and signed by the party responsible for the compliance of this section stating that the party has no knowledge of the location of the certificate of registration or the license plates, shall be filed with the director of finance of the county having jurisdiction over the vehicle. In any event the certificate of ownership or other evidence of title shall be forwarded to the director of finance.

(b)  Upon receipt of the certificate of ownership, certificate of registration, license plates, and application for a salvage certificate, the director of finance shall issue a salvage certificate in the name of the purchaser or insurance company.

(c)  Upon resale of the salvage vehicle, the seller or, if the seller is an insurance company, its authorized agent shall transfer the salvage certificate and issue a bill of sale to the purchaser which shall be on a form prescribed by the director of finance.  The seller shall notify the purchaser, in writing, of the requirements of this chapter regarding the recertification of salvage vehicles.  The seller shall sell the salvage vehicle only to a person licensed pursuant to chapter 437B, sections 289-4, or 445-232, or any person who executes an affidavit which states whether or not the salvage vehicle would be used to construct a rebuilt vehicle as defined in section 286-2 and that if the salvage vehicle is to be rebuilt, the purchaser will register the rebuilt vehicle as required by this chapter.

(d)  In the event the salvage vehicle is rebuilt so as to be capable of again operating on the highways of this State, the motor vehicle shall not be licensed for such operation, nor shall the ownership thereof be transferred until there is submitted to the director of finance:

(1)  The prescribed bill of sale;

(2)  An appropriate application for registration of the rebuilt or restored motor vehicle along with the salvage certificate and a certificate of inspection signed by the registered or certified motor vehicle repair dealer who is bonded as required by section 437B-26, and who rebuilt the vehicle, attesting that the original recognized vehicle manufacturer's established repair procedures or specifications and allowable tolerances for the particular model and year were utilized and adhered to; and

(3)  Any other document and fee required by the director of finance.

The counties may, by ordinance, establish the fee to be charged for the inspection of rebuilt motor vehicles.

(e)  Whenever a certificate of registration and certificate of ownership is issued for a motor vehicle with respect to which a salvage certificate has been previously

issued, the new certificates shall conform to the requirements of section 286-47 and:

> (1)     Bear the words "Rebuilt Vehicle"; and
>
> (2)     Appear in such a manner as to distinguish them from the certificate of registration and certificate of ownership for motor vehicles other than rebuilt or restored motor vehicles.
>
>         (f)   In the event a total loss insurance settlement between an insurance company and its insured or a claimant for property damage caused by its insured results in the retention of the salvage vehicle by the insured or claimant, as the case may be, then in such event, the insurance company or its authorized agent shall notify, within ten days from the date of settlement, the director of finance of such retention by its insured or claimant, as the case may be, and shall notify its insured, or claimant as the case may be, in writing, of the requirements of this chapter regarding the recertification of salvage vehicles.  The notification shall be on a form prescribed by the director of finance.

Although the County's Determination and Notice just cites HRS § 286-48 generally, upon conceding that HRS § 286-22(c) did not authorize its actions here, the County pointed to HRS § 286-48(f) as authority for its revocation and demand for the surrender of the Title, Registration, and license plates for Fukuchi's vehicle.  However, this statute does not support the County's action.

As alluded to in Fukuchi's arguments, HRS § 286-48(a) provides detailed instructions related to Title, Registration and license plates when a vehicle is sold as salvage or conveyed to an insurance company, including requirements for the purchaser or insurer to forward Title, Registration, license plates, and an application for a salvage certificate to the Director.  HRS § 286-48(a) only applies to a vehicle that is sold as salvage or conveyed to an insurer; it does not apply to a vehicle that is retained by its owner.  It is undisputed that Fukuchi's vehicle

7

was neither sold as salvage nor conveyed to an insurance company. Therefore, HRS § 286-48(a) does not apply to Fukuchi's vehicle.[4]

HRS § 286-48(f) arguably applies to Fukuchi's vehicle,[5] but it does not authorize or support the County's revocation of Fukuchi's Title and Registration here.  Under HRS § 286-48(f), when a total loss settlement results in the insured's retention of the salvage vehicle, then *the insurance company or its agent* must notify the Director of such retention, and the insurance company or its agent must notify the insured – in this case Fukuchi – of the requirements for recertification of a salvage vehicle.  HRS § 286-48(f) provides no authority to the Director to take action against a vehicle owner upon receipt of the notice from the insurance company or its agent.

Reading HRS § 286-48 as a whole, particularly in light of other provisions in HRS chapter 286, it is clear that Fukuchi's ability to renew his Registration, sell the vehicle, or lawfully operate it on State highways is restricted and subject to numerous requirements.  HRS § 286-48 does have applications to Fukuchi's vehicle.  However, none of the statutory provisions relied on by the County support its revocation of Title and Registration, and/or its demand for immediate surrender of Title, Registration, and license plates.

---

[4]     HRS § 286-48(b) follows from a sale under HRS § 286-48(a), and instructs the Director to issue a salvage certificate in the name of the purchaser or insurance company.

[5]     Fukuchi's insurer, State Farm Mutual Automobile Insurance Company, declared the vehicle a total loss and tendered a check to Fukuchi, which he refused to accept because he did not agree that the vehicle was a total loss. A motor vehicle insurance policy may provide for the adjustment and settlement of a total loss, consistent with statutory requirements, and subject to either party's rights under the insurance contract or at common law.  See Hawaiʻi Motor Vehicle Insurance Law, HRS chapter § 431:10C, including, *inter alia*, HRS §§ 431:10C-309 to 311 (2019).

(3)   Fukuchi argues that the County erred in claiming that an insurance company properly notified it of the total loss of Fukuchi's vehicle.  This argument lacks merit.  As set forth in footnote 3 above, the plain language of the statutory definition of "Rebuilt vehicle" in HRS § 286-2 establishes that the insurer is solely responsible for declaring a vehicle a total loss when there is material damage to the vehicle's structure and the projected cost of repairs exceeds its market value.  See HRS § 286-2 ("'Rebuilt vehicle' means any vehicle which has been declared a total loss by an insurer and has been rebuilt or repaired to operate on public highways." (emphasis added)).  In addition, HRS § 286-48(f) specifically provides for an agent of the insurance company to provide notice to the Director.  Fukuchi provides no authority for his argument that IAA cannot act as an insurance company's agent.

(4)   Fukuchi argues that the County erred in accepting IAA's determination that Fukuchi's vehicle was a total loss.  It appears that Fukuchi disputes that his vehicle was a total loss.  However, Fukuchi provides no authority for the proposition that the County has an obligation to independently determine or verify that a vehicle is a total loss and we find none.  This argument is without merit.

We now turn to Fukuchi's challenges to the District Court's Order Denying Appeal:

(1) & (2)   Fukuchi argues, *inter alia*, that the District Court erred in denying Fukuchi's appeal and concluding that the County's Determination and Order complied with HRS chapter 286 and is lawful.  Some of the statements in the

9

County's Determination and Order were merely informative, such as the requirements to lawfully operate the vehicle on public roads if it is rebuilt, including who can certify that the vehicle was properly rebuilt. However, as discussed above, the Director's revocation of Title and Registration, and demand for immediate surrender of the vehicle's Title, Registration, and license plates, were not authorized by the statutory provisions relied on by the County. Therefore, the District Court erred in part in concluding that the County was correct in sending Fukuchi the County's Determination and Notice.

(3) Fukuchi argues that the District Court erred in finding and concluding that Fukuchi's "real dispute [is] with the insurance company and not [the County]." As the District Court recognized, Fukuchi disagrees with the determination that his vehicle is a total loss. However, as noted above, that determination was made by the insurer, not the County, and the County is not required to independently determine or verify whether the vehicle is a total loss. On that issue, Fukuchi's dispute is with the insurance company, as correctly concluded by the District Court.

However, as discussed above, Fukuchi raised a meritorious challenge to the County's actions in revoking his Title and Registration and demanding immediate surrender of Fukuchi's Title, Registration, and license plates.

Accordingly, the District Court's October 1, 2021 Order Denying Appeal is affirmed in part and vacated in part; this case

10

is remanded to the District Court for further proceedings consistent with the Summary Disposition Order.[6]

DATED:  Honolulu, Hawaiʻi, February 21, 2025.

On the briefs:

Dean K. Fukuchi,
Appellant-Appellant *pro se.*

Ryan K. Thomas,
Mark D. Disher
Deputy Corporations Counsel,
for Appellee-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge

---

[6]     We note that HRS § 286-59 (2020) provides:

**§ 286-59  Appeal; procedure.**  Upon appeal, the district court shall hold a hearing de novo, and shall have power to enter such judgment or order as in its reasonable judgment may be warranted by all of the circumstances.  In making the judgment or order, the court may waive defects or irregularities in the current or previous registrations which, in its opinion, have been satisfactorily explained on the part of the appellant, or may order registration of the vehicle subject to reasonable conditions to be then or thereafter, within a reasonable time fixed by the court, complied with by the appellant, upon noncompliance with which conditions the director of finance may cancel such registration.  The conditions may include the furnishing of a bond in a reasonable amount, to be fixed by the court, to insure compliance with other conditions or to indemnify the director of finance and any other person in the event it is thereafter held or found that the registration was wrongful. Any certificate of registration issued subject to any such condition shall bear thereon an appropriate notation referring to the condition or the words "conditional registration".  A copy of the court's order as to the conditional registration shall be served upon the director of finance and retained in the file relating to the registration, and shall constitute notice to the world of the condition therein stated, provided the certificate of registration contains a notation of conditional registration as hereinabove provided.